FILED

November 22, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 12:14 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| **MAURY ENDSLEY** | ) | **Docket No.: 2016-05-0743** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 76993-2014** |
| **BENCHMARK CONTRACTORS, LLC** | ) | |
| | ) | |
| **Employer,** | ) | **Judge Dale Tipps** |
| **And** | ) | |
| **NATIONWIDE INS. CO.** | ) | |
| **Insurance Carrier/TPA.** | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

This matter came before the undersigned workers' compensation judge on November 16, 2016, on the Request for Expedited Hearing filed by the employee, Maury Endsley, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Endsley is entitled to additional medical benefits for his back injury. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Endsley is likely to establish at a hearing on the merits that he is entitled to an additional or continued second-opinion evaluation with Dr. James Fish.[1] For the reasons set forth below, the Court holds Mr. Endsley is likely to meet this burden and is entitled to the requested medical benefits.[2]

### History of Claim

The following facts were established at the Expedited Hearing.  Mr. Endsley

---

[1] It was unclear from the initial filings whether Mr. Endsley sought a return to Dr. Fish for a surgical evaluation or authorization for the surgery described by his authorized treating physician (ATP), Dr. John Klekamp.  Mr. Endsley's counsel confirmed in his Pre-Hearing Statement and during the hearing that the second-opinion evaluation is the only issue currently before the Court.  As a result, the Court will not consider arguments and proof on the reasonableness and necessity of the surgical request at this time, but will only address the evidence and arguments related to Mr. Endsley's entitlement to a second-opinion evaluation.

[2] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

sustained a work-related injury to his low back on September 24, 2014. Benchmark accepted the claim as compensable and provided benefits, including a panel of orthopedic specialists, from which Mr. Endsley selected Dr. Klekamp as his ATP. Dr. Klekamp treated Mr. Endsley for a herniated disc and lateral recess stenosis and performed a left L4-5 hemilaminectomy on December 1, 2014. (Ex. 1 at 59.)

Following the surgery, Mr. Endsley reported a decrease in his radiating pain, but continued to complain of back pain. A follow-up MRI showed a successful discectomy with no evidence of ongoing nerve compression. *Id*. at 65. Dr. Klekamp referred Mr. Endsley to pain management and, on May 5, 2015, noted a discussion of future treatment options, including a L4-5 fusion. He stated:

> He is a smoker and I believe based on his ongoing symptoms and tobacco use, he would be a marginal to poor candidate to consider fusion. I could only provide for him a less than 50% chance that it would provide gainful long term relief from his back pain. He wishes to seek a second opinion. . . . I would like to transition his care over through pain management as I have not much more to offer him regarding future treatment options.

*Id*. at 66.

The parties agreed during the hearing that Benchmark provided a panel for a second opinion, from which Mr. Endsley selected Dr. Fish. The October 21, 2015 progress note from Dr. Fish contains the notation: "This is a second opinion only." Mr. Endsley reported pain in his lumbar spine that radiated down his left leg, as well as weakness and paresthesia in the left leg. After examining Mr. Endsley, Dr. Fish assessed lumbar stenosis, radiculopathy, lumbar HNP without myelopathy, and low back pain. He recommended an epidural steroid injection "and also [to] repeat an MRI of the lumbar spine with and without contrast to evaluate for a recurrent disc herniation, given that his symptoms have progressed and he did sustain a significant fall and has had previous lumbar surgery." He instructed Mr. Endsley to return after the MRI. (Ex. 7.) The parties also agreed that Benchmark authorized the MRI, but refused to authorize the return visit to Dr. Fish.

Mr. Endsley began pain management treatment with Dr. Eric Young on April 29, 2015. Dr. Young's February 16, 2016 office note shows that he reviewed the MRI ordered by Dr. Fish. Dr. Young concluded that note with, "We will refer him to Dr. Fish for his lumbar degenerative disc disease and evaluation for corrective surgery." (Ex. 6 at 248.)

Dr. Klekamp testified by deposition on April 28, 2016. He opined that fusion surgery was a viable, reasonable option for Mr. Endsley but was unable to say that it was necessary. Based on his review of Dr. Fish's notes, Dr. Klekamp felt that Mr. Endsley's

2

symptoms had progressed. (Ex. 1 at 13-15.)

On cross-examination, Dr. Klekamp confirmed he never recommended the fusion operation but did recommend a second-opinion consultation on the question of surgery. *Id.* at 21-22. He stated, "I think it's a reasonable option to consider, but I do not believe it was necessary." *Id.* at 30. He later testified on redirect that he would defer to Dr. Fish, as the second-opinion doctor, on whether surgery was reasonable and necessary. *Id.* at 31. When asked whether a follow-up examination with Dr. Fish was a reasonable and necessary treatment option, Dr. Klekamp responded, "Yes." *Id.* at 36.

Mr. Endsley filed a Petition for Benefit Determination, and the parties did not resolve the disputed issues through mediation. After the Mediating Specialist filed a Dispute Certification Notice, Mr. Endsley filed a Request for Expedited Hearing.

As noted above, Mr. Endsley's present claim is limited to the issue of whether he is entitled to a return to Dr. Fish for completion of his surgical second-opinion evaluation. At the hearing, he contended he is entitled to a return visit to Dr. Fish because Dr. Fish is one of his ATPs by virtue of his selection of Dr. Fish from a panel offered by Benchmark. He also claimed he is entitled to another appointment because both Dr. Young and Dr. Klekamp referred him to Dr. Fish. Since the referral came from ATPs, Benchmark is obligated to authorize a return visit so that Dr. Fish may complete the second opinion.

Benchmark countered that Mr. Endsley is not entitled to a return appointment because Dr. Fish is not an ATP.[3] It argued that Dr. Klekamp is the original panel ATP and the Workers' Compensation Statute provides no legal grounds for transferring Mr. Endsley to Dr. Fish's care. It also contended that Mr. Endsley has no statutory right to the second-opinion evaluation because the statute only provides for a second opinion when the ATP is recommending surgery. Further, Benchmark argued that it is not bound by Dr. Young's referral to Dr. Fish because, pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(E) (2015), Dr. Young can only refer Mr. Endsley back to Dr. Klekamp and cannot make a referral to another treating physician.

**Findings of Fact and Conclusions of Law**

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Endsley need not prove every element of his claim by a

---

[3] Benchmark suggested that the request for a return visit to Dr. Fish was not properly before the Court because it was not included in the DCN. It argued this is not a medical benefit and it should have been marked as "Other" on the DCN to preserve the issue for presentation at the hearing. The Court disagrees. A request for a medical evaluation could not be anything other than a medical benefit issue. Since the Mediator checked "Medical Benefits" as one of the disputed issues, this issue is properly before the Court. *See Marzette v. Pat Salmon & Sons, Inc.*, No. 2014-08-0058, 2015 TN Wrk. Comp. App. Bd. LEXIS 29, at *10-15 (Tenn. Workers' Comp. App. Bd. Sept. 18, 2015).

preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id*.; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

Applying these principles to the facts of this case, the Court finds Mr. Endsley is entitled to a return visit to Dr. Fish to enable the doctor to complete his second-opinion evaluation. While the parties cited several statutory provisions in support of their positions, the primary authority governing this dispute is Tennessee Code Annotated section 50-6-204(a)(3)(C) (2015), which provides:

> When the treating physician or chiropractor refers the injured employee, the employee shall be entitled to have a second opinion on the issue of surgery and diagnosis from a physician or chiropractor from a panel of two (2) physicians practicing in the same specialty as the physician who recommended the surgery. In cases where the employer has provided a panel of specialists pursuant to subdivision (a)(3)(A)(i) of this section, the employee may choose one (1) of the two (2) remaining specialists to provide a second opinion on the issue of surgery and diagnosis. The employee's decision to obtain a second opinion shall not alter the previous selection of the treating physician or chiropractor.

The treating physician, Dr. Klekamp, testified he recommended a second-opinion consultation on the question of surgery. Therefore, according to section 50-6-204(a)(3)(C), "the employee *shall* be entitled to have a second opinion on the issue of surgery." Benchmark initially complied with this requirement by providing a panel and authorizing an appointment with Dr. Fish. However, its compliance was incomplete because its refusal to allow Mr. Endsley to return to Dr. Fish following the MRI deprived him of his "second opinion on the issue of surgery." Benchmark must allow Mr. Endsley to return to Dr. Fish in order to satisfy its statutory duty of providing a second opinion.

Benchmark contended that the statute only provides for a second opinion when the ATP is recommending surgery; namely, "a panel of two (2) physicians practicing in the same specialty as the physician who *recommended the surgery*." (Emphasis added). Because Dr. Klekamp did not feel the surgery was both reasonable and necessary, Benchmark argued that, in the absence of a surgical recommendation, Mr. Endsley is not entitled to second opinion.

The Court is unpersuaded by this unnecessarily restrictive construction. First, the mandate of section 50-6-204(a)(3)(C) is that an employee *shall* be entitled to a second opinion if referred by the treating physician. The phrase, "the physician who recommended the surgery," does not limit this entitlement, but merely sets out the

composition of the panel an employer may offer. The Court notes there is no such limitation in the second sentence setting out an alternative panel procedure. Further, Benchmark's interpretation would be inconsistent with the inclusion of chiropractors in the first phrase, as chiropractors cannot perform or recommend surgery.

Regarding Mr. Endsley's contention that he is entitled to see Dr. Fish as his ATP, the Court notes that:

> In all cases where the treating physician has referred the employee to a specialist physician, surgeon, chiropractor or specialty practice group, the specialist physician, surgeon, or chiropractor to which the employee has been referred, or selected by the employee from a panel provided by the employer, shall become the treating physician until treatment by the specialist physician, surgeon, or chiropractor concludes and the employee has been referred back to the treating physician selected by the employee from the initial panel provided by the employer under subdivision (a)(3)(A).

Tenn. Code Ann. § 50-6-204(a)(3)(E) (2015). Based on this provision, Benchmark is correct that Dr. Young remains the ATP and he cannot transfer Mr. Endsley to Dr. Fish's care. However, this does not affect Mr. Endsley's entitlement to a full second-opinion evaluation with Dr. Fish, as recommended by Dr. Klekamp.

Benchmark also argued that the MRI ordered by Dr. Fish showed no progression of Mr. Endsley's condition. Thus, he does not require a return visit to Dr. Fish. In effect, Benchmark suggests Dr. Fish could not possibly recommend surgery once he reviews the MRI. Benchmark's interpretation of the MRI results may or may not be accurate. In any event, the Court finds it would be improper to allow Benchmark to avoid its statutory responsibility by substituting its medical judgment for that of Dr. Fish.

Finally, Benchmark raised the question of what would happen if Dr. Fish were to determine that surgery were reasonable and necessary. It asked, "Whose opinion would prevail?" As Dr. Fish has not given any opinion to date, the Court need not and cannot answer that question at this time. The Court can address this issue when and if it arises, but the mere prospect of conflicting medical opinions does not affect Benchmark's statutory duty to provide a valid and complete second-opinion evaluation.

Therefore, as a matter of law, Mr. Endsley has come forward with sufficient evidence from which this Court might conclude that he is likely to prevail at a hearing on the merits on the issue of his entitlement to a return visit to Dr. Fish.

**IT IS, THEREFORE, ORDERED** as follows:

5

1. Benchmark shall authorize and pay for Mr. Endsley to return to Dr. Fish for evaluation and/or testing as necessary for Dr. Fish to provide a surgical second-opinion evaluation, as required by the statute.

2. This matter is set for an Initial (Scheduling) Hearing on January 12, 2017, at 9:00 a.m.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 22nd day of November, 2016.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Deposition Transcript of Dr. John Klekamp
2. Records from Heritage Medical Center
3. Records from Madison Street Family Clinic
4. Records from Vanderbilt Bone & Joint Clinic
5. Functional Capacity Evaluation
6. Records from Comprehensive Pain Specialists
7. Records from Premier Orthopaedics
8. Records from The Imaging Center of Murfreesboro

Technical record:[4]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Agreed Exhibit List
5. Employer's Pre-Hearing Statement
6. Employee's Response to Employer's Pre-Hearing Statement

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 22nd day of November, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|---------------|------------------|---------|------------|-----------|---------------|
| **Timothy Lee** | | | | | x | **tim@timleelaw.com** |
| **Alston Peek** | | | | | x | **Alston.peek@mgclaw.com** |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**